# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

RENEE ANNETTE RICHARDS, individually, and as executrix of the ESTATE OF ROBERT E. RICHARDS, deceased,

5:17-cv-00178 (BKS/ATB)

Plaintiff,

v.

JOHNSON & JOHNSON, INC.; CORDIS CORPORATION; and DOES 1–100,

Defendants.

**Appearances:**

*For Plaintiff*:
Napoli Shkolnik, PLLC
Nicholas R. Farnolo
400 Broadhollow Road
Melville, NY 11747

*For Defendant Cordis Corporation:*
Harter Secrest & Emery LLP
Jeffrey A. Wadsworth
Adam W. Braveman
1600 Bausch and Lomb Place
Rochester, NY 14604

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Renee Annette Richards brings this action individually and as the executrix of the estate of her late husband, Robert E. Richards, alleging that his death was caused by a defective inferior vena cava ("IVC") filter designed, manufactured, and sold by Johnson & Johnson, Inc. ("J&J"), Cordis Corporation ("Cordis"), and one hundred unidentified Doe

defendants. (*See generally* Dkt. No. 64). Cordis has moved, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the claim for breach of express warranty (Count V) asserted in Plaintiff's Second Amended Complaint (the "SAC"). (Dkt. No. 66). For the reasons discussed below, Cordis' motion is denied.[1]

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id*. (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

Defendant Cordis moves to dismiss Plaintiff's express warranty claim on the grounds that Plaintiff failed to provide presuit notice of the breach of warranty and failed to allege the substantive elements of the claim. The Court assesses these arguments in turn below.

---

[1] The Court assumes familiarity with the factual allegations in this case as recited in its prior decisions. (*See* Dkt. No. 54, at 3–6; Dkt. No. 60, at 2–3).

## A. Express Warranty Claim (Count V)

### 1. Presuit Notice

To recover on a warranty claim under the New York Uniform Commercial Code ("UCC"), a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.Y. U.C.C. § 2-607(3). The policies underlying the notice requirement include: (1) facilitating settlement through negotiation; (2) giving the seller access to the facts to investigate the claim; (3) allowing the seller to avoid future defects; and (4) protecting the seller from stale claims. *See* 1 Barkley Clark & Christopher Smith, The Law of Product Warranties § 9.3, Westlaw (database updated Nov. 2017); *Tomasino v. Estee Lauder Co. Inc.*, No. 13-cv-4692, 2015 WL 4715017, at *3, 2015 U.S. Dist. LEXIS 103991, at *8–9 (E.D.N.Y. Aug. 7, 2015). The notice requirement is "designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." N.Y. U.C.C. § 2-607 cmt. 4.

The comments to the UCC specify the level of detail required:

> The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the buyer, as under the section covering statements of defects upon rejection (§ 2-605). Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.

*Id.*; *see also Cliffstar Corp. v. Elmar Indus., Inc.*, 254 A.D.2d 723, 724 (4th Dep't 1998). "[T]he sufficiency and timeliness of the notice is generally a question for the jury." *Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014).

Plaintiff alleges that Defendants "were made aware and received notice of their breach of . . . warranties via adverse event reports received on March 16, 2015 and March 27, 2015, as well as other notices of the breach." (Dkt. No. 64, ¶ 131).[2] In her opposition to the motion to dismiss, Plaintiff submitted an adverse event report dated March 16, 2015, notifying "Cordis A Johnson and Johnson Co" of a patient's death on February 19, 2015 after a TrapEase IVC Filter or a component of the device had migrated to the right ventricle of the patient's heart. (Dkt. No. 68-1). Plaintiff argues that this adverse event report "clearly indicates that Cordis was aware of the injury and death of Mr. Roberts as early as March 2015, well before the filing of this lawsuit." (Dkt. No. 68, at 9). Cordis objects to the Court's consideration of this report. A complaint, however, "is deemed to include . . . materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citation omitted). A document is "integral" to the complaint when the complaint "relies heavily upon its terms and effect." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). Here, the SAC explicitly refers to and relies upon the March 16, 2015 adverse event report as notice of the breach of warranty. (Dkt. No. 64, ¶ 131). The report is thus incorporated by reference into the SAC and may be considered by the Court. *See Sira*, 380 F.3d at 67.

Cordis argues that, in any event, the adverse event report is insufficient because the Plaintiff herself had to give notice. The Court notes that neither party has cited any case considering the sufficiency of notice under § 2-607(3) when the defective product is alleged to have caused the death of the buyer.

---

[2] There are no facts alleged regarding "other notices of the breach." (Dkt. No. 64, ¶ 131).

Plaintiff contends that, even if the allegations in the SAC regarding notice were deemed insufficient, no notice was necessary because "the UCC requirements are not necessarily applicable to claims regarding products liability," asserting that there are, for example, exceptions to the notice requirement "where the product is for retail sale[3] or where the product is intended for human consumption." (Dkt. No. 86, at 6). Citing *Fischer v. Mead Johnson Labs.*, 41 A.D.2d 737 (2d Dep't 1973), *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-cv-371, 2000 WL 33911224, 2000 U.S. Dist. LEXIS 22223 (N.D.N.Y. Sept. 28, 2000), and *Tomasino v. Estee Lauder Cos.*, No. 13-cv-4692, 2015 WL 4715017, 2015 U.S. Dist. LEXIS 103991 (E.D.N.Y. Aug. 7, 2015), Plaintiff argues that the rationale underlying New York case law excusing the notice requirement is based on a distinction between claims grounded in tort, as opposed to claims based on contract.

Plaintiff's argument is not without force. In *Fischer,* for example, the Appellate Division ruled that the notice requirement did not apply to claims of personal injury involving an oral contraceptive because requiring such notice for a complaint "grounded on tortious elements . . . on account of a defect of edible goods in a retail transaction would strain the rule beyond a breaking point of sense or proportion to its intended object." 41 A.D.2d at 737–38 (quoting *Kennedy v. Woolworth Co.*, 205 A.D. 648, 650 (1st Dept. 1923)). In *Kennedy*, the court ruled that no presuit notice was necessary in a father's action against a retailer for the injury his

---

[3] Cordis argues that this is not a case involving a retail sale. Plaintiff's decedent is alleged to have purchased the TrapEase device "through his medical providers" and had it implanted by a doctor in a hospital. (Dkt. No. 64, ¶¶ 25, 126). In any event, the cases cited by Plaintiff do not support the proposition that there is an absolute exception to the notice requirement for retail sales. *See, e.g., Tomasino*, 2015 WL 4715017, at *4 (ruling that notice requirement applied to retail customer of cosmetic products seeking monetary damages for false advertising); *id.* at *3 (noting that "the official commentary that accompanies § 2-607(3)(a) . . . plainly contemplates the applicability of the notice requirement to retail consumers," and "as a matter of policy, the notice requirement serves several important functions that apply with equal force to merchant and consumer purchasers"); *see also Colella v. Atkins Nutritionals, Inc.*, No. 17-cv-5867, 2018 WL 6437082, at *16, 2018 U.S. Dist. LEXIS 207390, at *45 (E.D.N.Y. Dec. 7, 2018) (declining to apply a notice exception for retail sales, "particularly given that the exception appears to be exclusively applied where a party alleges physical, in addition to economic, injury").

daughter sustained when she ate candy sold by the retailer. *See* 205 A.D. at 648–50. And in *Tomasino*, the court summarized the rationale of this case law as follows: "regardless of the stated theory of recovery, there is no purpose in imposing a requirement relating to contracts on cases that essentially sound in tort law." 2015 WL 4715017, at *4. As the court further noted, "every case of which I am aware in which courts implementing New York law declined to apply the notice requirement to a breach of contract claim amounted to a tort claim in which the plaintiff suffered some personal injury." Because Tomasino's damages were "entirely monetary and sound[ed] only in contract law," the court found "no reason to excuse her from the procedural requirements of § 2-607(3)(a)." *Id.*; *see also* 1 Michael Weinberger, New York Products Liability 2d § 15:1, Westlaw (database updated Apr. 2018) (explaining that "[p]ersonal injury actions for breach of express warranty are usually viewed differently from commercial actions," and noting that "the requirement of notice to the defendant of the breach, applicable to commercial cases, has been held to be inapplicable to personal injury cases" (footnote omitted) (citing *Fischer*)).

Cordis cites no New York authority rejecting this distinction.[4] The distinct treatment of warranty claims in personal injury cases is found in other jurisdictions.[5] In light of the allegations of notice in the SAC, the fact that the sufficiency of notice is generally a question for

---

[4] Cordis' citation to *Singleton v. Fifth Generation, Inc.*, No. 15-cv-474, 2016 WL 406295, 2016 U.S. Dist. LEXIS 14000 (N.D.N.Y. Jan. 12, 2016), is unavailing, as that case did not involve a personal injury.

[5] *See, e.g.*, *Gerrity v. R.J. Reynolds Tobacco Co.*, 399 F. Supp. 2d 87, 92 (D. Conn. 2005) (finding no Connecticut state case holding that the UCC notice provision "applies in personal injury cases where there is no direct buyer-seller relationship between the parties, which fully comports with the UCC language limiting notice to cases between 'buyers' and 'sellers,'" and concluding that a plaintiff "need not give notice of an alleged breach of warranty to a manufacturer before bringing a products liability lawsuit to recover for personal injuries"); *Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1283–84 (M.D. Ala. 2001) (explaining that, under Alabama law, "notice need not be given by a warranty beneficiary who suffers a personal injury" because "notice is inconsequential in preventing or mitigating the harm since the injury has already occurred"); William H. Henning, *A Unified Rationale for Section 2-607(3)(a) Notification*, 46 San Diego L. Rev. 573, 585 n.46 (2009) ("Some courts have differentiated between claims for economic loss and claims for personal injury and have held that filing a lawsuit is insufficient notification only in the former cases." (citing cases from Illinois and Texas)).

the jury, and the aforementioned authority declining to apply the notice requirement in personal injury actions, at this preliminary stage of the case, the Court declines to dismiss Plaintiff's express warranty claim for lack of presuit notice.

### 2. Substantive Elements

Under the UCC, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.Y. U.C.C. Law § 2-313(1)(a). "New York breach of express warranty claims require (i) a material statement amounting to a warranty; (ii) the buyer's reliance on this warranty as a basis for the contract with his immediate seller; (iii) the breach of this warranty; and (iv) injury to the buyer caused by the breach." *Babayev v. Medtronic, Inc.*, 228 F. Supp. 3d 192, 216 (E.D.N.Y. 2017) (quoting *Avola v. La.-Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013)).

First, Cordis argues that Plaintiff failed to plead reliance on any expressed warranty. (Dkt. No. 66-1, at 8). In the context of express warranty, however, reliance "requir[es] no more than reliance on the express warranty as being a part of the bargain between the parties." *CBS Inc. v. Ziff-Davis Publ'g Co.*, 75 N.Y.2d 496, 503 (1990). The requirement does not turn on "whether the buyer believed in the truth of the warranted information on the warranty . . . but 'whether [it] believed [it] was purchasing the [seller's] promise [as to its truth].'" *Id.* (alterations in original) (quoting *Ainger v. Mich. Gen. Corp.*, 476 F. Supp. 1209, 1225 (S.D.N.Y. 1979), *aff'd*, 632 F.2d 1025 (2d Cir.1980)). If reliance, so understood, is found, "the right to be indemnified in damages for its breach does not depend on proof that the buyer thereafter believed that the assurances of fact made in the warranty would be fulfilled"; it "depends only on establishing that the warranty was breached." *Id.* at 503–504. Here, Plaintiff has alleged that Plaintiff's decedent, through his physicians, purchased a Cordis TrapEase IVC filter from Cordis

7

and that Cordis made certain representations about its filters in product documentation and advertisements, including that the filters were "designed to provide resistance to migration" and were "self-centering . . . to avoid filter titling." (Dkt. No. 64, ¶¶ 126, 128, 129). Based on these allegations, it is a reasonable inference that Plaintiff's decedent, through his physicians, believed he was "purchas[ing] [Cordis'] promise as to the existence of the warranted facts." *CBS*, 75 N.Y.2d at 504. Therefore, reliance is sufficiently pled.

Second, Cordis contends that Plaintiff failed to "allege the exact terms of the express warranty upon which she relied" and did not "specify the sources in which such a warranty allegedly appeared." (Dkt. No. 66-1, at 9). Cordis' characterization of Plaintiff's pleading is inaccurate. According to the SAC, the "package inserts for Cordis IVC filters, instructions for use, sales pamphlets and media advertisements" warranted that Cordis' TrapEase IVC filters were "designed to provide resistance to migration" and were designed "to avoid filter tilting." (Dkt. No. 64, ¶¶ 128, 129). The SAC outlines the terms of the express warranty and identifies its sources.[6] The cases cited by Cordis are inapposite, as the plaintiffs in those cases had only pled barebones allegations in support of their express warranty claims.[7] Accordingly, Cordis' motion to dismiss the express warranty claim is denied.

---

[6] Cordis cites *Becker v. Cephalon, Inc.*, No. 14-cv-3864, 2015 WL 5472311, at *7, 2015 U.S. Dist. LEXIS 123670 (S.D.N.Y. Sept. 15, 2015), for the proposition that a plaintiff must state "the exact terms of the warranty." But *Becker* is quoting a California federal case applying New York law, *Brown v. Kerr Inv. Holding Corp.* (*In re Hydroxycut Mktg. & Sales Practices Litig.*), No. 09-md-2087, 2010 WL 2839480, at *2, 2010 U.S. Dist. LEXIS 74750 (S.D. Cal. July 20, 2010). The "exact terms" wording is not found in the New York cases cited by *Brown*.

[7] *Compare* (Dkt. No. 64, ¶¶ 128, 129 (specifying that Cordis warranted in its "package inserts for Cordis IVC filters, instructions for use, sales pamphlets and media advertisements" that the TrapEase filters resisted, among other things, migration and tilting)), *with Bruno v. Zimmer, Inc.*, No. 15-cv-6129, 2016 WL 4507004, at *5, 2016 U.S. Dist. LEXIS 114843 (E.D.N.Y. Aug. 26, 2016) (finding that the complaint did not "identify the specific terms of any purported warranty" but only contained a "laundry list of representations allegedly made by Defendants"), *Burkett v. Smith & Nephew Gmbh*, No. 12-cv-4895, 2014 WL 1315315, at *8, 2014 U.S. Dist. LEXIS 43995 (E.D.N.Y. Mar. 31, 2014) (noting that the complaint did not identify the alleged "advertising and promotional materials" where the representations were made), *Gelber v. Stryker Corp.*, 788 F. Supp. 2d 145, at 165–66 (S.D.N.Y. 2011) (dismissing express warranty allegations to the extent that the pleading did not specify "where these alleged representations appeared or to whom they were made"), *Fisher v. APP Pharm., LLC*, 783 F. Supp. 2d 424, 431 (S.D.N.Y. 2011) (finding that the alleged representation that "the product was of merchantable quality and safe for the use for which

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant Cordis' motion to dismiss (Dkt. No. 66) the express warranty claim (Count V) from the Second Amended Complaint (Dkt. No. 64) is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 13, 2018
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

it was intended" failed to allege the "specific words, promises or statements" constituting the warranty), *and Johnson v. Monsanto Chem. Co.*, 129 F. Supp. 2d 189, 194 (N.D.N.Y. 2001) (concluding that the plaintiffs had "not specified the terms or source of the express warranty on which they allegedly relied"). Although the express warranty allegations in *Teixeria v. St. Jude Medical S.C., Inc.*, 193 F. Supp. 3d 218, 224 (W.D.N.Y. 2016) (ruling that the "bare-bones allegations are too generic to set forth a claim for breach of an express warranty"), are similar to the ones advanced by Plaintiff here, the Court finds that the SAC is more specific because it identifies the nongeneric migration and tilting representations and locates those representations in the filters' product documentation and advertising.