UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

RENEE ANNETTE RICHARDS, individually and as executrix of the Estate of Robert E. Richards, deceased,

                    Plaintiff,

v.

CORDIS CORPORATION,

                    Defendant.

5:17-cv-178 (BKS/ATB)

---

**Appearances:**

*For Plaintiff:*
Nicholas R. Farnolo
Napoli Shkolnik, PLLC
400 Broadhollow Road
Melville, NY 11747

*For Defendant:*
Andrew D. Kaplan
Robbie Rogart Jost
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004

Sarah Starling Marshall
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, NY 10022

Jeffrey A. Wadsworth
Harter, Secrest Law Firm
1600 Bausch & Lomb Place
Rochester, NY 14604

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

Plaintiff Renee Annette Richards brings this action individually and as the executrix of the estate of her late husband, Robert E. Richards, alleging that his death was caused by a defective inferior vena cava ("IVC") filter designed, manufactured, and sold by Cordis Corporation. (*See generally* Dkt. No. 64). Presently before the Court is Plaintiff's motion to seal certain portions of her motion to approve the parties' settlement of this wrongful death action. (Dkt. No. 224). Plaintiff has provided the Court with unredacted copies of the documents she seeks to seal, which the Court has reviewed in camera. Defendant joins Plaintiff's motion to seal with respect the specific amount of the parties' settlement and any financial terms that can be used to derive that amount. (Dkt. No. 226). For the following reasons, Plaintiff's motion is denied.

**II.     LEGAL STANDARD**

"The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie County*, 763 F.3d 235, 238–39 (2d Cir. 2014). "Indeed, the common law right of public access to judicial documents is said to predate even the Constitution itself." *Id*. at 239. The First Amendment to the U.S. Constitution "also protects the public's right to have access to judicial documents." *Id*. A party seeking to seal documents submitted to a court bears the burden of showing that sealing is proper. *See DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

      **A.      Common Law Right of Access**

The Second Circuit has articulated a three-step process for determining whether documents should be sealed in light of the common law right of access. "Before any such

common law right can attach . . . a court must first conclude that the documents at issue are indeed 'judicial documents.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). To constitute a judicial document, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo* ("*Amodeo I*"), 44 F.3d 141, 145 (2d Cir. 1995).

Second, after determining that the documents are judicial documents and that the "common law presumption of access attaches," the Court must "determine the weight of that presumption." *Lugosch*, 435 F.3d at 119. According to the Second Circuit,

> the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.

*United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044, 1049 (2d Cir. 1995). When a document plays a role in a court's adjudication of litigants' substantive rights—a function that is "at the heart of Article III"—the presumption is strong, but "[a]s one moves along the continuum, the weight of the presumption declines." *Id.* When "documents are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal." *Id.* at 1050.

Third, the court must balance any "competing considerations" against the weight of the presumption of access. *Lugosch*, 435 F.3d at 120. "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Id.* (quoting *Amodeo II*, 71 F.3d at 1050); *accord Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016). When weighing privacy interests, courts should consider "the degree to which the subject matter

3

is traditionally considered private rather than public." *Amodeo II*, 71 F.3d at 1051. Courts should also assess the "nature and degree of injury," paying heed to "the sensitivity of the information and the subject" but also to "how the person seeking access intends to use the information." *Id.* at 1051 (explaining that "[c]ommercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts").

    B.    **First Amendment Right of Access**

The First Amendment right of access stems from the qualified right of the public and the press "to attend judicial proceedings and to access certain judicial documents." *Lugosch*, 435 F.3d at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). Once a court concludes that there is a qualified First Amendment right of access to the judicial documents at issue, it may only seal the documents "if specific, on the record findings are made demonstrating the closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). "Broad and general findings by the trial court . . . are not sufficient to justify closure." *Id.* (quoting *In re N.Y. Times Co.*, 828 F.2d at 116). Examples of "higher values" may include law enforcement interests, the privacy of innocent third parties, *Amodeo II*, 71 F.3d at 1050, and the attorney-client privilege, *Lugosch*, 435 F.3d at 125.

**III.**    **DISCUSSION**

    A.    **Settlement Amount**

"Although in many—if not most—cases, a settlement agreement would not qualify as a 'judicial document,'" a settlement that "is submitted for court approval is indisputably a document that is 'relevant to the performance of the judicial function and useful in the judicial process,' and thus a 'judicial document' subject to the presumption of access." *Jones v. Smith*, 319 F. Supp. 3d 619, 624 (E.D.N.Y. 2018) (quoting *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d

332, 337 (S.D.N.Y. 2012)); *see also ABC v. XYZ Corp.*, No. 18-cv-11653, 2019 WL 1292503, at *6, 2019 U.S. Dist. LEXIS 47287, at *15–16 (S.D.N.Y. Mar. 19, 2019), *report-recommendation adopted by* 2019 WL 1304466, 2019 U.S. Dist. LEXIS 46421 (S.D.N.Y. Mar. 20, 2019); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004) (citing *SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993), for the proposition that the "presumption in favor of the public's common law right of access to court records . . . applies to settlement agreements that are filed and submitted to the district court for approval"). The "public has an interest in knowing the contents of materials upon which a court makes a decision, including a determination of whether to approve a settlement." *Chase v. Corr. Med. Care, Inc.*, No. 14-cv-474, 2015 WL 9308269, at *2, 2015 U.S. Dist. LEXIS 170982, at *4 (N.D.N.Y. Dec. 22, 2015); *Olano v. Designs by RJR, Ltd.*, No. 17-cv-5703, 2017 WL 4460771, at *2, 2017 U.S. Dist. LEXIS 166279, at *4 (S.D.N.Y. Oct. 6, 2017) (observing, in the context of Fair Labor Standards Act ("FLSA") settlements which, like wrongful death settlements, are subject to court approval, that the "overwhelming majority of courts in this Circuit that have analyzed the propriety of redacting FLSA settlement amounts or filing FLSA settlement agreements under seal have disapproved of those requests" due to the strong presumption of public access).

      Here, Plaintiff seeks to file under seal the following documents: (1) Notice of Plaintiffs' Motion for Settlement Approval;[1] (2) the Declaration of Nicholas R. Farnolo in Support of Plaintiffs' Motion for Approval of Settlement, and (3) Exhibits A, C, D, E, F, H, and I to Mr. Farnolo's Declaration. (Dkt. 224-1, at ¶¶ 4–12). According to the Farnolo Declaration, Plaintiff seeks to seal these documents "because they contain confidential and protected information pursuant to the parties' Confidential Settlement Agreement," including "the gross settlement

---

[1] It appears that Plaintiff filed this Notice publicly. (Dkt. No. 225).

5

award, a breakdown of the retainer fees, and other sensitive financial and personal information relating to Plaintiff and her adult children, such as their addresses." (*Id.* ¶¶ 13–14). Farnolo states that Plaintiff "agrees with and seeks sealing of the financial terms of the Confidential Settlement Agreement, as well as the financial terms of her arrangement with her counsel, in order to protect her and her family from having their personal finances being thrust into the public realm." (*Id.* ¶ 15; *see also* Dkt. No. 224-7, at ¶ 15 (Affidavit of Plaintiff Rene Richards asking that "sensitive financial and personal details be sealed")).

Defendant joins Plaintiff's motion for permission to file under seal and requests that "(1) the specific amount of Cordis's confidential settlement with Plaintiff and (2) any financial terms in the Approval Motion that can be used to derive the specific amount of Cordis's settlement with Plaintiff remain under seal." (Dkt. No. 226, at 1). Defendant states that it is "currently embroiled in litigations throughout the country" relating to its IVC filters and argues that, "[i]f the specific amount of its confidential settlement with Plaintiff here is made public, Cordis will be put at a significant and unfair disadvantage" in its active settlement negotiations elsewhere. (*Id.* at 1–2). Defendant argues that "other plaintiffs' counsel will undoubtedly use" the amount of its settlement with Plaintiff "to demand that Cordis meet or beat the amount" in their own cases. (*Id.* at 2). Defendant notes that the "agreement to keep confidential the financial terms of the settlement was material to Cordis's decision to settle" this case. (*Id.*).

Courts in this Circuit have repeatedly found that, without a more particularized showing of a need for confidentiality in a given case, these types of concerns are insufficient to overcome the presumption of public access to settlements requiring court approval. *Cf. Wolinsky*, 900 F. Supp. 2d at 338–39 (holding, in the FLSA context, that neither the existence of a confidentiality provision nor a defendant's concern about "copycat lawsuits or embarrassing inquiries"

overcomes the presumption of public access to a settlement agreement subject to court approval, and collecting case law). The fact that Defendant argues it will be disadvantaged in other, active settlement negotiations does not itself constitute the necessary particularized showing. *Cf. In re September 11 Litig.*, 723 F. Supp. 2d 526, 532 (S.D.N.Y. 2010) (finding that the risk that disclosure of settlement information would "chill future settlement of the remaining lawsuits" against defendants and cast them "in a false light" "cannot overcome the presumption favoring public access to judicial documents"). The Court further finds that Plaintiff's conclusory statement that she wishes not to disclose sensitive financial and personal details also is not a sufficiently particularized showing of a need for confidentiality that outweighs the presumption of access to judicial documents.[2]

Accordingly, the Court denies the parties' request to file under seal the settlement amount agreed to or other amounts which could be used to derive that amount.

### B.    Retainer Agreement, Attorney's Fees, and Expenses

Plaintiff seeks to file the retainer agreement between her and her attorneys (Exhibit A) under seal on the ground that it is privileged. (Dkt. No. 224-1, at ¶ 6). However, the "Second Circuit has 'consistently held that, absent special circumstances, client identity and fee information are not privileged.'" *Bernstein v. Mafcote, Inc.*, 43 F. Supp. 3d 109, 114 (D. Conn. 2014) (quoting *In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 247–48 (2d Cir. 1986) (en banc)). "While consultation with an attorney, and payment of a fee, may be necessary to obtain legal advice, their disclosure does not inhibit the ordinary communication necessary for

---

[2] The cases the parties cite are distinguishable, as they do not involve settlements subject to court approval. *See, e.g.*, *Schoeps v. Museum of Modern Art*, 603 F. Supp. 2d 673, 676 n.2 (S.D.N.Y. 2009) (preserving confidentiality of settlement agreement which "was not the basis of any decision or action by the Court" and was submitted only "at the Court's request"); *Gambale*, 377 F.3d at 143 (noting that "settlement documents" "were entered into on a confidential basis between the parties and [were] not themselves part of the court record" and finding only a "weak" presumption of access to references to the settlement amount made at a court conference).

an attorney to act effectively, justly, and expeditiously." *Id.*; *see also Funke v. Life Fin. Corp.*, No. 99-cv-11877, 2003 WL 21005246, at *1, 2003 U.S. Dist. LEXIS 7237, at *2 (S.D.N.Y. Apr. 30, 2003) (noting that "fee arrangements per se are not privileged"). The Court has reviewed the retainer agreement in Exhibit A and is satisfied that it contains no privileged information. Accordingly, the Court denies Plaintiff's request to file under seal Exhibit A or other information regarding the attorney's fees sought in this case.

Similarly, attorney-client privilege "does not extend to billing records and expense reports unless they reveal the motive of the client seeking representation, litigation strategy, or the specific nature of the services provided." *Bernstein*, 43 F. Supp. 3d at 114 (citation and internal quotation marks omitted). Therefore, Plaintiff may not file under seal the litigation disbursements made in this matter, (Dkt. No. 224-8 (Exhibit H)), or other expense figures. *See also Leslie v. Met Pro Techs., LLC*, No. 16-cv-1428, 2019 WL 5783534, at *4, 2019 U.S. Dist. LEXIS 195139, at *13 (N.D.N.Y. Mar. 1, 2019) ("[T]he Court's analysis with regard to the approval of the attorneys' fee amount cannot properly be understood without disclosure of the entire settlement figure."), *report-recommendation adopted by* 2019 WL 5783518, 2019 U.S. Dist. LEXIS 198567 (N.D.N.Y. Mar. 26, 2019).

### C.     Other Matters

Finally, Plaintiff seeks to file under seal Exhibits C, D, E, F, and I on the grounds that these exhibits contain personal information including the private addresses of Plaintiff and her adult children and Decedent's date of birth and Medicare number. The Court finds that wholesale sealing of these exhibits is not warranted. Plaintiff is directed to redact personal identifiers from these filings in accordance with Local Rule 5.2(a). *See* N.D.N.Y. L.R. 5.2(a) (providing that "parties shall refrain from including, or shall redact where inclusion is necessary," certain

"personal identifiers from all filings with the Court, including exhibits thereto," including dates of birth and home addresses).

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion to seal certain portions of Plaintiff's motion for approval of the settlement (Dkt. No. 224) is **DENIED**, and it is further

**ORDERED** that Plaintiff is directed to email the Courtroom Deputy all of the documents currently identified as sealed, with any redactions warranted by Fed. R. Civ. P. 5.2 and N.D.N.Y. Local Rule 5.2, by March 8, 2022, so that the documents can be filed on the docket.

**IT IS SO ORDERED.**

Dated: March 1, 2022
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

